NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 8 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KIM CRAMTON,

        Plaintiff-Appellee,

  v.

GRABBAGREEN FRANCHISING LLC, *et al.*,

        Defendants-Appellants,

  v.

GULF GIRL SQUARED, INC.,

        Third-Party Plaintiff-Appellant.

No.   21-17122

D.C. No. 2:17-cv-04663-DWL

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Dominic W. Lanza, District Judge, Presiding

Argued and Submitted May 17, 2023
Phoenix, Arizona

Before: NGUYEN and COLLINS, Circuit Judges, and KORMAN,** District
Judge.
Partial Concurrence and Partial Dissent by Judge COLLINS.

---

     *     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

     **    The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

Defendants-Appellants Grabbagreen Franchising, LLC, Eat Clean Operations, LLC ("ECO"), and Keely Newman, and Third-Party Plaintiff-Appellant Gulf Girl Squared, Inc. ("GGS") (jointly, "Defendants") appeal from various decisions and orders and a final judgment of the district court entered in favor of Plaintiff-Appellee Kim Cramton ("Cramton"). After several years of litigation, including cross-motions for summary judgment and a bench trial, Cramton ultimately prevailed on two of her claims against Defendants, namely that Defendants failed to repay Cramton an amount due on a note (the "Promissory Note") in connection with a business loan from Cramton to ECO, and that Defendants failed to pay Cramton any wages during portions of 2016 and 2017, in violation of the Arizona minimum wage law. Defendants now appeal: (1) the district court's decision and order granting summary judgment to Cramton on the Promissory Note claim; and (2) the district court's dismissal of two of Defendants' counterclaims on summary judgment. We affirm.

1. Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This Court reviews grants of summary judgment *de novo*. *See Maner v. Dignity Health*, 9 F.4th 1114, 1119 (9th Cir. 2021). "[V]iewing the evidence in the light most favorable to the nonmoving party," the Court must determine "whether

there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Bonta*, 33 F.4th 1107, 1113 (9th Cir. 2022).

Cramton provided a loan to ECO as reflected in the Promissory Note executed on October 27, 2016. The terms of the Promissory Note provided that ECO owed Cramton $66,527.00 plus 3.5% annualized interest accruing until the Note was fully paid. The parties do not dispute that the full amount of the Promissory Note has not been repaid to Cramton.

The Promissory Note expressly provides that the full amount of the note is payable on demand if ECO "becomes insolvent or the subject of a voluntary or involuntary proceeding in bankruptcy, reorganization, or creditor composition." ECO filed a voluntary Chapter 7 bankruptcy petition on January 29, 2020. *See* Bankruptcy Petition No. 20-11194-EPK (Bankr. S.D. Fla.). By its plain terms, the Promissory Note therefore became payable to Cramton, at the latest, after that petition was filed. Defendants have not raised any arguments on appeal compelling us to disturb the district court's grant of summary judgment to Cramton as to breach of the Promissory Note.[1]

---

[1] Because we agree with the district court that the Promissory Note was payable on demand as a result of the ECO bankruptcy, we express no view on whether the Promissory Note was a negotiable instrument under Arizona law.

**2.** The district court also correctly granted summary judgment as to Defendants' counterclaims. The record before us does not contain any disputed material facts suggesting that Cramton violated the terms of the Confidential Settlement Agreement and Release ("GGS Release") among Cramton, Keely Newman, and GGS. The plain language of the Mutual Releases provision in that agreement does not foreclose any and all lawsuits by Cramton against each of the Defendants, but rather only prohibits lawsuits that "relat[e] in any manner, directly or indirectly to any matter relating to [GGS], each Party's past and current ownership of common stock or any other interest in [GGS], each Party's employment with [GGS] or otherwise related in any way to the Dispute."[2]

None of Cramton's ten claims in the operative Amended Complaint relate to the matters released by the GGS Release. Indeed, Cramton did not name GGS as a defendant with respect to any of these claims, and GGS was introduced as a party to the suit only as a third-party plaintiff/counterclaimant. Defendants have not demonstrated how Cramton's claims in this action are "directly or indirectly" related to GGS, to Cramton's ownership of GGS stock, or her employment by GGS.

---

[2] "Dispute" is not defined in the GGS Release but, in the context of that agreement, relates to the money Cramton was owed when GGS sold three Grabbagreen franchises. The parties do not contest this understanding, on which the district court also relied.

21-17122

**3.**  A third issue originally on appeal—the district court's judgment in favor of Cramton on the minimum wage claim—has been stayed.  Keely Newman is the only defendant relevant to that claim, and she filed for Chapter 11 bankruptcy after noticing her appeal in this action.  *See* Bankruptcy Petition No. 22-18912-EPK (Bankr. S.D. Fla.).  Because that bankruptcy petition is still pending, the appeal of this issue was stayed automatically on January 6, 2023 pursuant to 11 U.S.C. § 362(a)(1).  *See* ECF No. 35 (Clerk's Order).  Though Defendants initially argued that the automatic stay did not apply, counsel for Defendants acknowledged the stay at oral argument, and noted that the issue was "not before this Court at this time."

Consequently, the Clerk will now administratively close this appeal as to Keely Newman.  No mandate will issue as to Keely Newman in connection with this administrative closure, and this memorandum disposition does not constitute a decision on the merits as to Keely Newman.  Within 28 days after any change to the automatic stay's effect in this appeal, any party may notify this court and move to reopen the appeal as to Keely Newman or for other appropriate relief.

**AFFIRMED IN PART AND STAYED IN PART.**

*Cramton v. Grabbagreen Franchising LLC, et al.*, No. 21-17122



COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concur in the memorandum disposition, except as to Part 2. majority affirms the district court's grant of summary judgment to Plaintiff Kim Cramton as to Defendants' third and fifth counterclaims, which involved alleged breaches of a general release ("Release") between Cramton, Defendant Keely Newman, and non-party Gulf Girl Squared, Inc. ("GGS"). Because a rational trier of fact could conclude that Cramton violated the terms of the Release at least in part, I would reverse the district court's grant of summary judgment to Cramton on those counterclaims and would remand for further proceedings. Therefore, I respectfully dissent as to Part 2 of the majority's memorandum disposition.

In relevant part, the Release prohibits Cramton from bringing any claims against GGS or Keely Newman that "relat[e] in any manner, directly or indirectly to any matter relating to [GGS], each Party's past and current ownership of common stock or any other interest in [GGS], *each Party's employment with [GGS]* or otherwise related in any way to the Dispute" (emphasis added). As part of Cramton's employment with GGS, she was responsible for managing three Grabbagreen stores owned by GGS, which required her to be physically present in those stores. In her Amended Complaint, Cramton asserted several employment claims against Defendants that specifically related to her management duties at

GGS's Grabbagreen stores, including the requirement that she work in the stores. For part of the time that Cramton worked for GGS, she was also simultaneously employed by Defendant Grabbagreen Franchising LLC ("GFL"). However, GFL did not own any Grabbagreen stores and Cramton's responsibilities for GFL did not require her to be physically present at the Grabbagreen stores. Based on such facts, a reasonable trier could find that Cramton's store-based claims could only refer to her work at the GGS stores. Moreover, at her deposition, Cramton expressly acknowledged that her request for an "accommodation" under the Americans with Disabilities Act related to her work at the three stores during the time when they were owned by GGS. On these facts, a trier could readily find that, in clear violation of the Release, Cramton asserted claims that, at least in part, "relat[ed] directly or indirectly to any matter relating to . . . [her] employment with [GGS]."

In reaching a contrary conclusion, the majority erroneously suggests that the scope of the Release is limited to the parties' dispute over "the money Cramton was owed when GGS sold" the three stores. *See* Mem. Dispo. at 4 n.2. But that overlooks the Release's additional language (quoted above) that clearly embraced any matters concerning Cramton's "employment" at those stores. The majority also states that GGS was not named as a party, *see id*. at 4, but that overlooks the fact that the Release expressly extends beyond GGS to its "agents," "affiliates,"

2

"past and present officers," and "past and present employees." At least with respect to claims asserted by Cramton based on conduct while she was employed at stores owned by GGS, those terms are broad enough to include Defendants, including the corporate Defendants.

Accordingly, I would reverse the district court's grant of summary judgment to Cramton as to Defendants' third and fifth counterclaims and would remand for further proceedings. I therefore dissent as to Part 2, but I otherwise concur in the memorandum disposition.